UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TODD LABER, et al<br>    Plaintiff,<br><br>v.<br><br>NATIONWIDE PROP. & CASUALTY<br>INS. CO.,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 1:18-cv-00420-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This case is before the Court on the Motion for Summary Judgment filed by defendant Nationwide Property & Casualty Insurance Co., contending that, as a matter of law, on undisputed facts it was entitled to deny property coverage for the destruction by explosion and fire of the three-family apartment building where the plaintiffs lived. The plaintiffs are Todd Laber, his son Zachary Laber, and his stepdaughter Natasha Sorrentino; all three are insureds on the homeowner policy issued for 228 State Street, Bristol, Rhode Island.[1]

The plaintiffs claimed a loss of $671,557.54, and an entitlement to the full amount of coverage up to the policy limit of $308,100.00. (ECF No. 1-1 at 44, No. 17-

---

[1] The now-deceased wife of Todd Laber, Emily Laber, was the policy holder. (ECF No. 17-8.)

1

9 at 2.) On March 3, 2018, Nationwide denied coverage. The action was filed in state court and removed to this Court on July 31, 2018. Jurisdiction lies by virtue of diversity of citizenship, 28 U.S.C.A. § 1332(a)(1), as the plaintiffs are residents of Rhode Island and the defendant is a foreign corporation.

The plaintiffs' Complaint sets forth two bases for relief: breach of contract and bad-faith denial of the claim. Both arose from Nationwide's resting on the policy's Exclusion of Coverage provision to justify its refusal to compensate plaintiffs for the loss. The parties concurred that the bad-faith claim should be severed, as success on the breach claim is a predicate for recovery for bad-faith denial. *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980).

For the reasons that follow, I GRANT summary judgment to the defendant on the breach of contract claim and, as a consequence, GRANT it as well on the bad faith denial claim.[2]

## Standard for Summary Judgment

The task of a district court when presented with a motion for summary judgment is clear. It is to review the record to determine whether there exists a genuine issue in dispute as to any material fact. If there is not, the Court then determines whether the moving party is entitled to judgment as a matter of law. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.

---

[2] The denial of coverage cannot be in bad faith if, as I find here, the insurer's refusal to pay was justified by the policy. Indeed, the insurer's refusal need only be "fairly debatable" to defeat a bad-faith claim. *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980).

1991). The facts and inferences must be viewed in the light most favorable to the nonmoving party – here, the plaintiffs. *Emsbo v. Fireman's Fund Ins. Co.,* 950 F. Supp.2d 369, 371 (D.R.I. 2013).

## The Explosion and Zachary's Plea

On July 15, 2017, an explosion destroyed the residential property at 228 State Street, Bristol, in which the plaintiffs lived. A subsequent investigation, coupled with the statement under oath of Zachary Laber, revealed that on that day 24-year-old Zachary was engaged in making hash[3] in the room that he occupied in his father's apartment. (ECF 17-2 at 8.) Zachary explained that in order to make hash, he would "fill a glass tube receptacle with cannabis, wash butane over that and allow that to collect in a tray, and that tray, as previously stated, would be put into the oven to safely remove any gas." *Id.* at 5. Zachary kept about ten butane canisters,

---

[3] "Hash (hashish) is "the concentrated resin from the flowering tops of female hemp plants (*Cannabis sativa* or *C. indica*) that is smoked, chewed, or drunk for its intoxicating effect." https://www.merriam-webster.com/dictionary/hashish
    There is some confusion about what, exactly, Zachary was making. Nationwide's denial of loss alleged he was making "hash oil" – a substance that is extracted from hash. (ECF No. 1-1 at 87.) Nationwide continued to refer to the ultimate product as "hash oil." (Memorandum, ECF No. 18-1 at 1.) The plaintiffs refer to the ultimate product as "THC gummies." (ECF No. 22 at 1). The only direct evidence comes from Zachary's statement under oath in which he plainly said he was producing "hash:"
    Q. And when I say hash, what is the correct term about what you were actually creating?
    A: That should be the correct term.
    Q: Not hash oil?
    A: No.
(ECF No. 17-2 at 7.) All of these, however, are contraband. R.I.G.L. § 21-28-4.01(a)(1) prohibits the manufacture of a controlled substance. R.I.G.L. § 21-28-2.02 establishes five schedules of controlled substances, and R.I.G.L. § 21-28-2.08(d)(17) classifies any extract of cannabis as a hallucinogen on schedule I.

3

bought at a local "grow store" in Massachusetts, in the apartment for this purpose. *Id.* at 6.

The fire occurred, Zachary recollected, at "the moment before [he placed] the receptacle into the oven." *Id.* at 8. The marijuana buds were already in the glass receptacle, and he had poured two canisters of butane over them. *Id.* at 9. On at least three prior occasions, Zachary had followed this process to make hash, apparently without incident. *Id.* at 9. On this day, however, tragedy struck.

On this hot mid-July morning, Zachary was "sweating," he explained, so he turned on a window air conditioning unit. He turned the dial ... and remembered nothing more except that the room was suddenly entirely on fire. *Id.* at 10. Vincent P. Calenda, CFI, CFEI, a fire investigator retained by Nationwide, later examined the scene and determined that the fire "result[ed] from an explosion that occurred during the manufacturing and cooking procedure involving cannabis." (ECF No. 17-10 at 2.)[4]

Zachary was charged in state court by Information P2-2018-0921A with three counts of manufacturing a controlled substance, one count of conspiracy, and one count of maintaining a common nuisance. The four major felonies were dismissed by the prosecution pursuant to R.I.Super.R.Crim.P. 48(a), and he entered a plea of *nolo*

---

[4] All that Mr. Calenda would opine to with respect to the cause of the fire was that the explosion occurred during, and was caused by, the cooking process. Both parties, however, at oral argument, accepted the inference that a spark from the air conditioner caused the butane fumes to ignite.

4

*contendere* to the nuisance charge. He was placed on three years probation. (ECF No. 17-7 at 3.)

## The Policy

Under Rhode Island law, the insured has the burden of proving that insurance coverage was in place that applied to the loss suffered. *Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 770 A.2d 403, 417 (R.I. 2001). The plaintiffs have met that burden. The policy by its express terms professes to cover comprehensive property loss subject only to certain exclusions described in Section 1 therein. (ECF No. 17-8.) Because the plaintiffs have surmounted that hurdle, the burden shifts to the insurer to prove any exclusion of coverage justifying its failure to pay for the otherwise-covered loss. *Kaiser-Roth*, 770 A.2d at 417.

As seems to be typical of the standard Nationwide residential policy,[5] Section 1 provides as follows:

> [Nationwide] does not cover any loss to property resulting directly or indirectly from any of the following. ...
> (f) *increased hazard*, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an insured;
> (g) *intentional acts*, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts; intentional acts *include criminal acts*. Such acts exclude coverage for all insureds.

(ECF No. 17-8 at 7) (emphasis supplied).

---

[5] Other cases involving Nationwide recite the same policy language. *E.g., Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 3:10-cv-689-CRS, 2012 WL 896105 at *2 (W.D. Ky. March 15, 2012) (identical language).

5

Nationwide contends that three exclusions justify its refusal to pay for the loss. It maintains that Zachary's production of hash increased the risk, that Zachary's use of butane, which then filled the room with fumes ignited by his turning on the air conditioner, was an intentional act that could have reasonably been expected to result in the fire, and that Zachary committed a criminal act resulting in the fire. Because I find that Nationwide has carried its burden with respect to a criminal act, and that there is no genuine issue of material fact to preclude granting summary judgment on that basis, I do not reach the appropriateness of summary judgment with respect to either of the other purported exclusions.[6]

---

[6] I do not reach the issue of whether summary judgment would be appropriate on either the increased risk or the intentional act exclusions. Nationwide rests on what it seems to assume is widespread knowledge and accepted fact that the release of liquid butane creates an increased risk of hazard. It cites cases in which courts held that the hazard was increased by the manufacture of methamphetamines, *Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 3:10-cv-689-CRS, 2012 WL 896105 at *3 (W.D. Ky. March 15, 2012), and *Farmers Inc. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1338 (Or. Ct. App. 1993); the operation of a large moonshine still, *Colker v. Ct. Fire Ins. Co.*, 7 S.W.2d 502, 505 (Ky. 1928); and a marijuana grow operation to produce "honey oil" using butane. *Nationwide Mut. Fire Ins. Co. v. McDermott*, 603 F. App'x. 374, 378-79 (6th Cir. 2015). But these cases all involved largescale operations that, as the Court held in *McDermott*, changed the way the premises was used. *Id.* at 378. That is not the case here. More troubling, though, is the complete absence of expert testimony or other evidence on the extent of the risk of butane fumes.

With respect to the exclusion for intentional acts that could reasonably be anticipated to cause a loss, the defendant is less than clear about whether it considered the pouring of the butane into the receptacle, or the turning on of the air conditioner to be the intentional act. While the injury resulting from an intentional act does not itself have to have been intentional, *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001, 1003 (Ala. 1990), there does have to have been sufficient awareness of a reasonably expected injury. *See Allstate Ins. Co. v. McCarn*, 683 N.W.2d 656, 660 (Mich. 2004) (injury not reasonably expected where shooter reasonably believed the gun was not loaded).

## Application of Law

When language in an insurance policy is clear and unambiguous, a court must apply its plain meaning. *Zarrella v. Minnesota Mut. Life Ins. Co.*, 824 A.2d 1249, 1259 (R.I. 2003). Here, the policy unambiguously excludes coverage for injury resulting from a criminal act. It is not disputed that Zachary's conduct violated two distinct criminal statutes. The first, R.I.G.L. § 21-28-4.01(a)(4)(i), prohibits the manufacture of any Schedule I or II controlled substance, including hash.[7] The second, R.I.G.L. § 11-30-3 prohibits maintaining a common nuisance.[8] Zachary unambiguously admitted that he was engaged in the manufacture of hash.

The plaintiff contends that because those charges were dismissed, and Zachary was not convicted of that crime, manufacturing a controlled substance cannot be used as the criminal act that would, under the policy, exclude coverage for any resulting

---

[7] R.I.G.L. § 21-28-4.01(a)(1) provides that "it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Subsection 4.01(a)(4)(i) sets forth the penalties.

[8] R.I.G.L. § 11-30-1. Nuisance is defined as any place "in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, ... [or] tenements used as houses of ill fame, for illegal gaming, or where intemperate, idle, dissolute, noisy, or disorderly persons are in the habit of resorting." Were this the only criminal act committed, I would not find it justified exclusion.
The plaintiff argues that his plea of *nolo contendere*, followed by three years probation, is not a "conviction" under Rhode Island law. *Beauchemin v. Sweeten*, 471 A.2d 624, 627 (R.I. 1984) (where straight probation is imposed after a plea of *nolo contendere*, there is no "sentence" and therefore no "conviction"). That may be, but no "conviction" is required under the policy so the legal consequence of a "nolo-probation" is immaterial. The reason the exclusion does not apply is not the lack of formal "conviction," but rather that maintaining a common nuisance bears an insufficient causal relationship to the fire. It cannot be said this fire resulted in any way from maintaining a place where the activities detailed in § 11-30-1 occur.

injury. When policy language is clear on its face, there is nothing for a court to do but apply its plain language. *Zarrella,* 824 A.2d at 1259. In reading this policy exclusion, there is no way – short of adding words that do not there appear – that one could read it as requiring a conviction. It simply does not. It merely requires proof of a "criminal act[s]." The defendant is, of course, required to *prove* commission of a criminal act, which it could do by relying on a conviction if there were one. But in the absence of a conviction here, Nationwide relies squarely on Zachary's admission and that is sufficient proof.[9]

There is no dispute between the parties of the operative facts here: Zachary was engaged in the manufacture of hash. As a direct result of that activity, the butane he was using ignited, inferentially from a spark caused by the engagement of an air conditioner. A fire ensued, and the loss was sustained. The policy exclusion is clear on its face and these undisputed facts satisfy it.

Summary judgment is GRANTED to the defendant Nationwide on Counts I, breach of contract, and on Count II, bad-faith denial.

---

[9] The plaintiff agrees that Zachary's medical marijuana card did not immunize him from criminal culpability here because the statute specifically exempts from protection anyone using a liquid solvent in the manufacture of the narcotics. R.I.G.L. § 21-28.6-4(t) ("Notwithstanding any other provisions of the general laws, the manufacture of marijuana using a solvent extraction process that includes the use of a compressed, flammable gas as a solvent by a patient cardholder or primary caregiver cardholder shall not be subject to the protections of this chapter.").

IT IS SO ORDERED.

/s/ Mary S. McElroy
Mary S. McElroy
United States District Judge

2/4//2020